Kevin Garden (VA Bar No. 30244)
kg@legal-counsels.com
**International Legal Counsels, PC**
901 North Pitt Street, Suite 325
Alexandria, VA 22314
Tel.: (703) 739-9111
Fax: (202) 318-0723

*Attorney for Plaintiff*
*First Line Software, Inc.*

FILED

2016 JUL 13  A 11: 42

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| **FIRST LINE SOFTWARE, INC.,**<br><br>          **Plaintiff,**<br>vs.<br><br>**ZERO360, INC.,**<br><br>          **Defendant.** | Case No.: 1:16cv890<br>COMPLAINT   GBL/MSN |

### COMPLAINT

1.  First Line Software, Inc. ("First Line" or "Plaintiff") by and through its undersigned attorneys, files this Complaint against ZERO360, INC. and its affiliates (collectively, "Zero360" or "Defendant") and states as follows:

### NATURE OF THE ACTION

2.  This is an action for breach of contract and copyright infringement arising from Zero360's failure to make payment to First Line with respect to services sought by, contracted for, received, and accepted by Zero360. As of the date of this Complaint, Zero360 has not fulfilled its obligation to pay to First Line the amount of $575,618.67 for accumulated and invoiced services provided to Zero360 by First Line pursuant to a development agreement and a subsequent

promissory note between the parties. First Line now brings this action in order to recover the $575,618.67 owed to it by Zero360, in addition to prejudgment interest and other monetary awards as requested by First Line and deemed appropriate by this Court.

## PARTIES

3. Plaintiff First Line is a software development company organized under the laws of the State of Delaware and has its registered address at 16192 Coastal Hwy, Lewes, Delaware 19958.

4. Defendant Zero360 is a corporation organized under the laws of State of Delaware, having its principal office located at 821 Second Avenue, Suite 800, Seattle, Washington 98104, with other offices in Delaware, California, and West Sussex and Berkshire, England.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) with regard to First Line's copyright infringement claim [17 U.S.C. §§ 106 and 501], which involves a question of federal law, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 with regard to First Line's state law claims.

6. This Court has personal jurisdiction over the Defendant due to its minimum contacts with the Commonwealth of Virginia and by operation of Virginia's long-arm statute pursuant to Va. Code Ann. § 8.01-328.1.

7. Venue is proper in this Court because the infringing products are offered for sale to residents of the Commonwealth of Virginia and, pursuant to the written agreement of Defendant, the state law claims are to be resolved under the laws of the Commonwealth of Virginia.

## FACTUAL BACKGROUND

8. First Line is a custom software development company that offers products ranging from single-purpose tasks for small businesses to complex, multi-platform systems for large corporate companies.

9. Upon information and belief, Zero360 is a multi-faceted development company, specializing in wearable technology (such as wrist cuffs which monitor a person's health) as well as web design, health, and marketing.

10. Zero360 hired First Line to design a software product in connection with wearable technology being developed by Zero360 (the "Software Product").

11. On May 1, 2013, Zero360 entered into a software development agreement with First Line (the "Agreement"), pursuant to which First Line developed the Software Product. *See* Exhibit A.[1] The Software Product is source code and other computer software information designed for an electronic watch named "PLUS". *See id.*

12. The Agreement stated that it "shall be subject to" the laws of England, and that both parties "irrevocably submit to the exclusive jurisdiction of the English courts." *Id.*, Section 26.

13. First Line developed and delivered the Software Product under the Agreement.

14. However, Zero360 has not paid for the services provided by First Line under the Agreement despite numerous demands by First Line and promises to pay by Zero360.

15. On or around October 8, 2013, First Line sent a letter to Zero360, notifying it of its breach of contract and First Line's suspension of services. *See* Exhibit B.

---

[1] The Agreement was never signed by both parties, but the version of the Agreement attached as Exhibit A reflects the terms to which the parties agreed.

16. On October 21, 2013, First Line and Zero360 signed a Memorandum of Understanding ("MOU"), confirming Zero360's debt to First Line for services rendered. *See* Exhibit C.

17. The MOU stated that Zero360 was seeking temporary relief of its financial obligations to First Line. *Id.* In order to obtain that relief, Zero360 agreed in the MOU to a schedule of payments to pay down its total accumulated debt, which at the time totaled $231,911.26. *Id.*

18. On April 4, 2014, Zero360 executed a Promissory Note in which Zero360 promised to pay First Line the debt owed. *See* Exhibit D.

19. The Promissory Note stated that all actions arising out of or in connection with it shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia. *See id.*, Section 12.

20. The Promissory Note further stated that, in the event of any dispute arising from or related to the subject matter of the Promissory Note, a legal action may only be brought in the United States District Court for the Eastern District of Virginia, Alexandria Division, or if that court lacked jurisdiction, any court "of competent jurisdiction" in the Commonwealth of Virginia. *Id.*

21. In the Promissory Note, Zero360 agreed to pay First Line the principal sum of $384,981.52 as well as interest on any unpaid portion of that principal in the amount of eight percent (8%) annually. *Id.* Zero360 also agreed in the Promissory Note that the amount due could be adjusted to reflect the total amount of accumulated debt to First Line. *Id.*

22. As noted above, in the Promissory Note, the parties agreed that this Court, and no other, has jurisdiction over claims arising under the agreement. *See id.*

23. In or around July 2014, Zero360 reached an agreement with a third party pursuant to which the third party would invest in Zero360 by subscribing for shares and providing secured loans to Zero360.

24. However, the agreement was subject to First Line agreeing that certain liabilities to the third party investors would "rank in priority to" the amounts owed to First Line.

25. On July 15, 2014, First Line signed a subordination agreement (the "Subordination Agreement") to help Zero360 obtain investments in its business and pay off the amount due to First Line. *See* Exhibit E.

26. In the Subordination Agreement, Zero360 agreed to a revised payment schedule which required it to pay First Line the amount of $20,000 by July 20, 2014, and then consecutive monthly payments of $60,000 until the total balance owed to First Line was paid. *Id.*

27. While First Line signed the Subordination Agreement, upon information and belief, no other parties formally signed the Subordination Agreement. *See id.*

28. Zero360 continued to fail to meet its obligations under the Promissory Note.

29. After Zero360 did not meet the obligations of the Promissory Note, First Line's attorneys sent an email to Zero360 on September 8, 2014 seeking an amicable solution to the debt owed. *See* Exhibit F.

30. When Zero360 did not respond to the email, First Line's attorneys sent a second email reiterating the same request on October 3, 2014. *See id.*

31. Zero360 replied on October 6, 2014, stating that it was continuing its efforts to make payments and was hopeful that it could begin those payments in the next week. *See id.*

32. Contrary to its representations, Zero360 made no payments.

33. On December 24, 2014, First Line's attorneys sent a letter to Zero360 for demand of payment of invoices and a notice of intellectual property infringement. *See* Exhibit G.

34. On January 12, 2015, Zero360 replied, once again confirming that the debt was owed to First Line and again promising to pay off the debt "in the coming days." *See* Exhibit H.

35. On February 2, 2015, First Line's attorneys sent another letter to Zero360 in an attempt to reach an amicable solution for the debt owed and a payment schedule. *See* Exhibit I.

36. On February 26, 2015, after further assurances by Zero360 that the debt will be paid "in the coming days," First Line's attorneys sent a final letter to Zero360 regarding the debt owed. *See* Exhibit J.

37. Zero360 did not send a payment schedule and Zero360 sent no further communication.

38. Upon information and belief, Zero360 has been and is currently using the Software Product in connection with its wearable product (*i.e.*, an electronic watch named "PLUS"), while the title to the Software Product in fact belongs to First Line pursuant to explicit language set forth in the Agreement.

39. Pursuant to the explicit language of the Agreement, the title to the Software Product was to be transferred to Zero360 upon full payment for the services rendered under the Agreement. *See* Exhibit A, Sections 3 and 8.1.

40. When First Line developed the Software Product in accordance with the Agreement, it fulfilled the Agreement's outlined terms.

41. Zero360 has repeatedly failed to make appropriate payments to First Line under Section 3 of the Agreement. *See id.* at Section 3.

42. In accordance with Sections 5 and 10 of the Promissory Note, Zero360 owes $575,618.67 U.S. Dollars as of April 21, 2016, which includes accumulated and unpaid interest. *See* Exhibit D.

43. Despite First Line's numerous efforts, as described herein, Zero360 has not repaid First Line for its work pursuant to the payment schedule set forth in the Promissory Note. *See id.*

44. Upon information and belief, Zero360, either directly or through its affiliates and subsidiaries, sells, distributes, or otherwise monetizes the Software Product in conjunction with the electronic watch titled "PLUS" distributed by Will.i.am. The specifications, design, technology, and overall appearance makes it abundantly clear that the watch "PLUS" contains, incorporates and uses the Software Product and related technology developed and owned by First Line under the Agreement. Zero360 owns the title of the Software Product (in lieu of payment pursuant to Sections 3 and 8.1 under the Agreement) and has not licensed its use to Zero360 or entered any other agreement that would allow First Line to use the Software Product in any way. *See* Exhibit A.

## COUNT I

### (Copyright Infringement)

45. First Line re-alleges the allegations contained in paragraphs 1 to 44 as though fully and completely set forth herein.

46. First Line and Zero360 entered into the Agreement pursuant to which First Line developed and delivered the Software Product to Zero360.

47. Under Section 8.1 of the Agreement, the title to the Software Product was to be transferred to Zero360 upon full payment for the services rendered under the Agreement. *See* Exhibit A.

48. Zero360 has not paid for the services provided by First Line under the Agreement despite numerous demands by First Line and promises to pay by Zero360.

49. Zero360, either directly or through its affiliates and subsidiaries, sells, distributes, or otherwise monetizes the Software Product in conjunction with the electronic watch titled "PLUS" distributed by Will.i.am. The specifications, design, technology, and overall appearance makes it abundantly clear that the watch "PLUS" contains, incorporates and uses the Software Product and related technology developed and owned by First Line under the Agreement.

50. Zero360 owns the title of the Software Product (in lieu of payment pursuant to Sections 3 and 8.1 under the Agreement) and has not licensed its use to Zero360 or entered any other agreement that would allow First Line to use the Software Product.

51. Therefore, Zero360 has infringed on First Line's copyright to the Software Product in violation of Sections 106 and 501 of the Copyright Act. *See* 17 U.S.C. §§ 106 and 501.

52. Zero360's acts of infringement are willful, intentional, and purposeful, in disregard of and with indifference to First Line's rights.

53. As a direct and proximate result of said infringement by Zero360, First Line is entitled to damages in the amount constituting $575,618.67.

## COUNT II

### (Breach of the Promissory Note)

54. First Line re-alleges the allegations contained in paragraphs 1 to 53 as though fully and completely set forth herein.

55. First Line and Zero360 entered into the Promissory Note, whereby Zero360 agreed to a payment schedule to repay the $575,618.67, including accumulated and unpaid interest, owed for services rendered under the Agreement. *See* Exhibit D.

56.     First Line fully performed its obligations under the Promissory Note.

57.     Zero360, however, has failed to pay the amount due for services rendered, despite repeated assurances that payment would be forthcoming.

58.     Therefore, Zero360 has breached its contractual obligations under the Promissory Note by failing to pay the balance owned under the Agreement and for the services rendered.

59.     As a result of the breach of contract, First Line has sustained damages in the amount of no less than $575,618.67, the unpaid balance of the services provided, including accumulated and unpaid interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant injunctive and declaratory relief against Defendant as follows:

a.      Issue a permanent injunction prohibiting Defendant from any further use and distribution of the Plaintiff's copyright;

b.      Issue an order declaring that Defendant willfully violated Plaintiff's rights;

c.      Issue an order declaring that Defendant breached the terms of the Promissory Note and is therefore liable to Plaintiff in the amounts to be determined at trial;

d.      Issue an order declaring that Defendant illegally used and therefore infringed Plaintiff's copyrighted material and is liable to Plaintiff for damages, which shall, at Plaintiff's subsequent election, be either Plaintiff's actual damages as determined at trial or statutory damages for willful infringement pursuant to 17 U.S.C. § 504(c)(2), plus punitive damages as allowed by law, together with prejudgment interest thereon, and to account for and return to Plaintiff any

COMPLAINT

monies, profits, and advantages wrongfully gained by Defendant as a result of Defendant's wrongful acts;

e. Issue judgments consistent with the orders above declaring that Defendant is liable to Plaintiff in the amounts determined at trial;

f. As part of the Order and Judgment requested, award Plaintiff its costs and attorney's fees related to its filing and pursuit of this matter, and such further relief as may be appropriate including pre-judgment and post-judgment interest; and

h. Provide any further relief deemed proper by the Court.

INTERNATIONAL LEGAL COUNSELS PC

DATED: July 12, 2016

By: _____
Kevin R. Garden (VA Bar No. 30244)
901 N. Pitt Street, Suite 325
Alexandria, VA 22314
Tel.: (703) 739-9111
Fac.: (202) 318-0723
kg@legal-counsels.com
Attorney for Plaintiff